Peter Anderson, Esq. (Cal. Bar No. 88891)
        peteranderson@dwt.com
Eric H. Lamm, Esq. (Cal. Bar No. 324153)
        ericlamm@dwt.com
Alex Cadena, Esq. (Cal. Bar No. 352442)
        alexcadena@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendants
PHILIP VON BOCH SCULLY,
MICHAEL LAVELL MCGREGOR,
DUSTIN ADRIAN BOWIE,
DAVID DEBRANDON BROWN,
COLE ALAN CITRENBAUM,
ZAIN JAVADD MALIK, and
SONY MUSIC ENTERTAINMENT

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| FORMAL ENTERTAINMENT LLC, *etc.*, <br><br> Plaintiff, <br><br> vs. <br><br> ZAIN JAVADD MALIK *etc.*, *et al.*, <br><br> Defendants. | ) Case No. 2:23-cv-7888 CBM (SKx) <br>) <br>) <br>) DEFENDANTS' MEMORANDUM OF <br>) POINTS AND AUTHORITIES IN <br>) SUPPORT OF MOTION FOR <br>) SUMMARY JUDGMENT AND <br>) ALTERNATIVE MOTION FOR <br>) PARTIAL SUMMARY JUDGMENT <br>) <br>) <br>) Date: December 30, 2025 <br>) Time: 10:00 a.m. |

Courtroom of the Honorable
Consuelo B. Marshall
United States District Judge

# **TABLE OF CONTENTS**

1.    INTRODUCTION .......................................................................... 1

(a)    Summary of Argument ........................................................... 1

(b)    Summary of Uncontroverted Facts......................................... 3

    (1)    The Alleged 2018 Creation and "Release" of *Somebody Tonight* ........................................................................... 3

    (2)    *Better* Was Recorded in August 2019, Eight Months Before Simmons Provided *Somebody Tonight* to MMM ........................ 3

    (3)    In 2023, Simmons Forms Plaintiff to Hold His and One Co-Author's Interests in *Somebody Tonight*, and Plaintiff Files This Lawsuit .................................................................. 4

    (4)    Plaintiff's Access Theory: In April 2020, Simmons Gave *Somebody Tonight* to a Music Promoter ....................... 4

    (5)    The Parties Complete the Initial Bifurcated Phase of Fact and Expert Discovery as to Liability ................................... 5

2.    THERE IS NO GENUINE DISPUTE THAT PLAINTIFF CANNOT ESTABLISH THE ELEMENTS OF COPYRIGHT INFRINGEMENT......... 6

(a)    The Standards Applicable to the Motion for Summary Judgment......... 6

(b)    Plaintiff's Claim for Direct Copyright Infringement ............................. 6

    (1)    Plaintiff Fails to Raise a Genuine Issue as to Whether Copying Even Occurred ............................................... 7

        (i)    Plaintiff Cannot Establish Access—a Reasonable Opportunity to Copy .......................................... 7

            a.    *Somebody Tonight* Was Not Widely Disseminated ........................................ 8

            b.    There Is No Chain of Events Connecting *Somebody Tonight* to *Better*'s Creators ........... 9

        (ii)    Separately, Plaintiff Also Cannot Show Substantial Similarity Probative of Copying ..................... 11

        (iii)    Plaintiff Does Not Even Try to Claim Striking Similarity ....................................................... 12

3.    PLAINTIFF FAILS TO RAISE A GENUINE DISPUTE AS TO UNLAWFUL APPROPRIATION ................................................. 13

(a)    The Extrinsic Test for Substantial Similarity in Protected Expression 13

(b)    Plaintiff's Expert Failed to Adhere to the Extrinsic Test ................... 15

i

(c)    The Undisputed Facts Confirm That Plaintiff Relies on Unprotectable Similarities ..................................................... 16

(d)    Plaintiff Cannot Satisfy the Extrinsic Test By Resorting to a Selection and Arrangement of Unprotectable Elements ...................... 19

(1)    Selection and Arrangement Protects Only a Particular, Coherent Pattern, Synthesis or Design Present in Both Works ......................................................................................... 19

(2)    Plaintiff Fails to Establish That *Somebody Tonight* and *Better* Share a Protectable Selection and Arrangement......................... 20

4.    PLAINTIFF'S SECONDARY INFRINGEMENT CLAIMS FAIL ACCORDINGLY .................................................................. 22

5.    DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT .... 22

6.    CONCLUSION.............................................................................. 22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*A&M Records, Inc. v. Napster, Inc.*,
   239 F.3d 1004 (9th Cir. 2001) ............................................................... 22

*Acuff–Rose Music, Inc. v. Jostens, Inc.*,
   988 F. Supp. 289 (S.D.N.Y. 1997) ......................................................... 8

*Art Attacks Ink, LLC v. MGA Entm't Inc.*,
   581 F.3d 1138, 1143 (9th Cir. 2009) ...................................................... 7

*Batiste v. Lewis*,
   976 F.3d 493 (5th Cir. 2020) ............................................................. 8, 9

*Benay v. Warner Bros. Entm't, Inc.*,
   607 F.3d 620 (9th Cir. 2010) ............................................................... 18

*Bernal v. Paradigm Talent Literary Agency*,
   788 F. Supp. 2d 1043 (C.D. Cal. 2010) ................................... 10, 12, 14

*Brown Bag Software v. Symantec Corp.*,
   960 F.2d 1465 (9th Cir. 1992) ............................................................. 16

*Cavalier v. Random House, Inc.*,
   297 F.3d 815 (9th Cir. 2002) ............................................................... 14

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .............................................................................. 6

*Cooley v. Target Corp.*, No. 20-2152 (DWF/DTS),
   2022 WL 4540091 (D. Minn. 2022) ...................................................... 8

*Corbello v. Valli*, 974 F.3d 965
   (9th Cir. 2020) ........................................................................ 14, 19, 21

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991) ............................................................................ 13

*Funky Films, Inc. v. Time Warner Entm't Co., L.P.*,
   462 F.3d 1072, 1077 (9th Cir. 2006) 952 F.3d 1051 ...................... 13, 15

*Gaste v. Kaiserman*,
   863 F.2d 1061, 1068 (2d Cir. 1988) ....................................................... 14

*Gray v. Hudson*, 28 F.4th 87 (2022) ............................................. 14, 17, 18

*Guzman v. Hacienda Recs. & Recording Studio, Inc.*,
   808 F.3d 1031, 1038 (5th Cir. 2015) ................................................. 8, 13

*Johannsongs-Publishing, Ltd. v. Lovland*,
   No. CV-18-10009-AB(SSx), 2020 WL 2315805
   (C.D. Cal. Apr. 3, 2020)................................................................... 15, 16

*King v. Najm*, No.
   CV 08-4164, 2011 WL 13186238 (C.D. Cal. Mar. 8, 2011)................................ 11

*Knowles v. Spin Master, Inc.*,
   No. CV 18-5827-PA(JCx), 2019 WL 4565102
   (C.D. Cal. Sept. 17, 2019)..................................................................... 15

*Litchfield v. Spielberg*,
   736 F.2d 1352, 1356 (9th Cir. 1984) ..................................................... 15

*Loomis v. Cornish*,
   836 F.3d 991 (9th Cir. 2016) .............................................. 7, 8, 9, 10, 11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986)................................................................................. 6

*McDonald v. West*,
   138 F. Supp. 3d 448 (S.D.N.Y. 2015) ..................................................... 18

*Meta-Film Assocs., Inc. v. MCA, Inc.*,
   586 F. Supp. 1346 (C.D. Cal. 1984) ......................................................... 10

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
   545 U.S. 913 (2005)............................................................................... 22

*Morrill v. Stefani*,
   338 F. Supp. 3d 1051 (C.D. Cal. 2018) ............................................. 13, 14

*Narell v. Freeman*,
   872 F.2d 907 (9th Cir. 1989) ................................................................. 17

*Newton v. Diamond*,
   388 F.3d 1189 (9th Cir. 2004) ......................................................... 14, 18

iv

*Newton v. Diamond*,
  204 F. Supp. 2d 1244 (C.D. Cal. 2002) .......................................................... 14, 19

*Olson v. National Broad. Co., Inc.*,
  855 F.2d 1446 (9th Cir. 1988) ........................................................................ 15, 16

*Rentmeester v. Nike, Inc.*,
  883 F.3d 1111, 1117 (9th Cir. 2018) ................................................. 6, 7, 11, 12, 13

*Rice v. Fox Broad. Co.*,
  330 F.3d 1170 (9th Cir. 2003) ............................................................................... 11

*Satava v. Lowry*,
  323 F.3d 805, 811 (9th Cir. 2003) ......................................................................... 19

*Shame On You Prods., Inc. v. Banks*,
  893 F.3d 661 (9th Cir. 2018) ................................................................................. 13

*Skidmore v. Led Zeppelin*,
  952 F.3d 1051 (9th Cir. 2020) .................................6, 7, 13, 14, 16, 18, 19, 20, 21

*Stabile v. Paul Smith Ltd.*,
  137 F. Supp. 3d 1173 (C.D. Cal. 2015) ................................................................ 12

*Stone v. Carey*,
  2025 WL 1190518 (C.D. Cal. Mar. 19, 2025)...................................................... 15

*Three Boys Music Corp. v. Bolton*,
  212 F.3d 477 (9th Cir. 2000) .................................................................................. 7

*Tisi v. Patrick*,
  97 F. Supp. 2d 539 (S.D.N.Y. 2000) ......................................................... 11, 12, 18

*VMG Salsoul, LLC v. Ciccone*,
  824 F.3d 871 (9th Cir. 2016) ........................................................................... 14, 19

*Woodland v. Hill*,
  136 F.4th 1199 (9th Cir. 2025) ............................................................................... 8

*Yonay v. Paramount Pictures Corp.*
  No. CV 22-3846-PA(GJSx), 2024 WL 2107721
  (C.D. Cal. Apr. 5, 2024)......................................................................................... 15

v

**Federal Statutes**

17 U.S.C.
   § 102(b) ......................................................................................................... 17, 18
   § 114(b) ............................................................................................................... 19

**Rules**

Fed. R. Civ. P. 56(a).......................................................................................................... 6

**Other Authorities**

2 M. NIMMER & D. NIMMER, NIMMER ON COPYRIGHT § 8.01[A] (2025) .................... 7

4 NIMMER ON COPYRIGHT § 13D.05[B][2] ................................................................ 12

# MEMORANDUM OF POINTS AND AUTHORITIES

## 1. INTRODUCTION

### (a) Summary of Argument

Plaintiff Formal Entertainment LLC ("Plaintiff") contends that the copyright it obtained from one or two of the songwriters of an obscure musical composition, which Plaintiff refers to as *Somebody Tonight*, is directly, contributorily, and vicariously infringed by the song *Better*, written by defendants Philip Von Boch Scully, Cole Alan Citrenbaum, David Debrandon Brown, Dustin Adrian Bowie, and Michael Lavell McGregor, sung by defendant Zain Javadd Malik—professionally known as Zayn— and released by defendant Sony Music Entertainment ("SME") ("Defendants"). The Court bifurcated discovery into liability and damages phases. Discovery as to liability has been completed and it establishes that there is no merit to Plaintiff's claims.

First, Plaintiff's claim for direct copyright infringement requires proof that the creators of *Better* in fact copied *Somebody Tonight*. Plaintiff does not come close to establishing a reasonable possibility of access through wide dissemination: Plaintiff's evidence of dissemination is minimal, and what Plaintiff has produced confirms *Somebody Tonight* had been barely disseminated at all when *Better* was written. Plaintiff also does not (and cannot) raise striking similarity, which would require proof that the works are so similar that the possibility of independent creation is precluded.

Instead, Plaintiff from the outset pinned its infringement claim on its allegation that in April 2020, Patrick Simmons, Plaintiff's sole owner and one of the *Somebody Tonight* songwriters, engaged a non-party, Jonah Rindner, to promote his songs, and Mr. Rindner allegedly volunteered to send *Somebody Tonight* to "every person in his contact list that works in the music industry." That theory of access fell apart completely when discovery confirmed that *Better* was written and recorded ***in August 2019***, some eight months before Plaintiff claims to have provided *Somebody Tonight* to Mr. Rindner. It is impossible for the creators of *Better*, in 2019, to have copied something that Plaintiff alleges they might have received in April 2020.

1

Plaintiff's access theory also fails for other, independent reasons.  There is no evidence that Mr. Rindner actually sent *Somebody Tonight* to anyone, and even if he did, Plaintiff's bare speculation that *Somebody Tonight* somehow could have reached the authors of *Better*—who all testified they have never heard of Mr. Simmons, Mr. Rindner, or *Somebody Tonight*—is insufficient to raise a genuine dispute as to copying.  Indeed, this Circuit has repeatedly rejected access theories based on speculation or conjecture.  Since there can be no copyright infringement without proof that copying occurred, Plaintiff's claim for direct copyright infringement fails.

Second, copyright claims also require proof that the alleged copying was of protected expression.  In this Circuit, that requires the application of the objective extrinsic test and, in music cases, expert testimony.  However, Plaintiff's expert, Nathaniel Sloan, Ph.D., failed to apply the principles and methods required by the extrinsic test, including because he failed to research prior art and relied on commonplace and generic similarities.  The opinions of Defendants' expert, Lawrence Ferrara, Ph.D., are therefore unrebutted and for those reasons alone, summary judgment should be granted.  Additionally, the claimed similarities amount to a short fragment of melody that was common before *Somebody Tonight*, the individual words "fight," "on," and "floor" in completely different lyrics, and a handful of other random, generic similarities scattered throughout the overall different works.  This Circuit, including in a 2020 *en banc* decision, has rejected claims that, like Plaintiff's claim here, rely on the presence of commonplace and unprotected elements used differently.  As a result, even if Plaintiff were able to raise a genuine dispute as to copying—and Plaintiff cannot—its claim for direct copyright infringement still fails as a matter of law.  And in the absence of an underlying direct infringement, Plaintiff's secondary liability claims for contributory and vicarious infringement fail as a matter of law as well.

Accordingly, Defendants' Motion for Summary Judgment should be granted.

///

2

(b)    **Summary of Uncontroverted Facts**

(1)    **The Alleged 2018 Creation and "Release" of** *Somebody Tonight*

*Somebody Tonight* was allegedly co-authored in 2018 by Plaintiff's sole owner, Patrick Simmons, who purportedly writes and performs music part-time under the name "Havyn." Facts 1, 3, 38. While Plaintiff alleges Mr. Simmons was the "main contributor" to *Somebody Tonight* (First Amended Complaint ("FAC") (Doc. 21) at 3 ¶ 9), discovery established that *Somebody Tonight* was actually co-written by Mr. Simmons with multiple non-parties, Jonathan Naoe, Jessica Gardlund, Tony Vennie, and Louis Matos. Fact 2.

Plaintiff asserts that *Somebody Tonight* was released on July 1, 2018, when Mr. Simmons posted *Somebody Tonight* on various digital streaming platforms like Spotify and YouTube. Fact 16. Plaintiff *alleges* that *Somebody Tonight* has "enjoy[ed] success among followers ... around the world" (FAC at 6 ¶ 21), but Plaintiff has no evidence of that. Quite the contrary, the only record Plaintiff has produced of earnings from *Somebody Tonight* shows that Mr. Simmons has made $50.49 from the song. Facts 23-27; *see* below at 8-9.

(2)    ***Better* Was Recorded in August 2019, Eight Months Before Simmons Provided *Somebody Tonight* to MMM**

*Better* was written by Mr. Citrenbaum, Mr. Scully, Mr. Brown, Mr. Bowie, and Mr. McGregor on August 28, 2019. Facts 7-11. At the end of the songwriting session that day, the songwriter defendants made a "demo" recording of *Better*, with Mr. Brown singing the lyrics. Fact 12. The songwriter defendants were the only individuals who were at or participated in the songwriting session in which *Better* was created, and each of them has testified that they had never heard of Mr. Simmons, "Havyn," or *Somebody Tonight* prior to Plaintiff's claim. Facts 9, 48, 53.

In November 2019, the demo recording was provided to Mr. Malik, and Mr. Brown's vocals were replaced by Mr. Malik's vocals. Fact 13. The version of *Better* featuring Zayn was released to the public by RCA Records, an SME record label, on

September 25, 2020.  Fact 14.  In the publicly released recording of *Better*, Mr. Malik sings the same lyrics and melody as in the demo version, and the publicly released version features the same recorded instrumental tracks (or "stems") as the demo version.  Accordingly, the musical composition in the August 2019 demo version of *Better* is, for purposes of this lawsuit, identical to the musical composition in the publicly released version featuring Mr. Malik.  Fact 15.

> **(3)    In 2023, Simmons Forms Plaintiff to Hold His and One Co-Author's Interests in *Somebody Tonight*, and Plaintiff Files This Lawsuit**

In preparation for this lawsuit and apparently hoping to avoid paying a potential award of attorney's fees and costs to Defendants, Mr. Simmons formed Plaintiff.  Fact 3.  Of the five people who created *Somebody Tonight*, only Mr. Simmons and Mr. Naoe assigned their copyright interests to Plaintiff, and none of the other co-songwriters joined this action.  Facts 4-6.  Plaintiff filed this action in September 2023 (Doc. 1) and Plaintiff alleges claims for direct, contributory, and vicarious infringement of the alleged musical composition copyright in *Somebody Tonight*.  FAC at 11 ¶ 39; Fact 69.

> **(4)    Plaintiff's Access Theory: In April 2020, Mr. Simmons Gave *Somebody Tonight* to a Music Promoter**

Plaintiff's pleadings confirm that Mr. Simmons filed this action based on mere speculation as to whether the creators of *Better* might have had access to *Somebody Tonight*—and as shown below, they did not.  Plaintiff hoped to establish access by alleging that in April 2020, Simmons engaged a company he refers to as "Talent Spotlite LLC d/b/a Modern Music Marketing a/k/a Premium Music Marketing ('MMM')" to help him gain listeners on Spotify for another of his songs called "'People Change.'"  FAC at 8 ¶ 29; Fact 39.  Plaintiff alleges that MMM's Jonah Rindner volunteered to "promote *Somebody Tonight* for free," offering to "pitch [it] to every person in his contact list that works in the music industry."  FAC at 8-9 ¶ 29;

Facts 40-42. However, Mr. Simmons conceded at his deposition that he has no evidence Mr. Rindner actually sent *Somebody Tonight* to anyone. Fact 43.

After Defendants' *Better* was released to the public, Mr. Simmons allegedly texted Mr. Rindner asking if Mr. Rindner had heard *Better*, and Mr. Rindner replied that he "worked it." Plaintiff alleges on information and belief that the songwriters of *Better* "became aware of Simmons' 'Somebody Tonight' by and through MMM." FAC at 9-10 ¶¶ 30-31. But it is beyond dispute that *Better* was written long before Mr. Simmons met Mr. Rindner, and Mr. Rindner and MMM were in no way involved in the creation of *Better*. Facts 7-9, 39-40, 46-47. Indeed, when Mr. Simmons allegedly asked Mr. Rindner whether *Better* was based on *Somebody Tonight*, Mr. Rindner responded "How would I know[?]" FAC at 9 ¶ 30.

### (5) The Parties Complete the Initial Bifurcated Phase of Fact and Expert Discovery as to Liability

In August 2024, the Court granted Defendants' Motion for an Order Bifurcating discovery into an initial phase of fact and expert discovery as to liability and, if necessary, a second phase as to damages. *See* Aug. 29, 2024, Order (Doc. 52). After completing fact discovery as to liability, the parties exchanged expert reports and completed expert discovery.

Defendants served affirmative and rebuttal expert reports by their musicologist expert, Dr. Lawrence Ferrara, who is Director Emeritus in Music and Performing Arts at New York University's Steinhardt School. Ferrara Decl. at 2 ¶ 2. Dr. Ferrara's reports (*id.* Exs. 8, 9) meticulously establish that the claimed similarities in *Somebody Tonight* and *Better* are fragmentary, commonplace public domain elements, randomly scattered throughout the overall different songs.

Plaintiff designated Nathaniel Sloan, Ph.D., a non-tenured Assistant Professor of Musicology at USC. Lamm Decl. Ex. 10 at 1 ¶ 2. Dr. Sloan's affirmative report identifies only "two" purportedly "substantial[]" similarities between *Better* and *Somebody Tonight*, namely (1) a fragment of a guitar melody and (2) a fragment of a

vocal melody, tracking that guitar melody, plus the word "fight," which is sung to different notes. *Id.* at 7 ¶ 20. As discussed below, Dr. Sloan failed to apply the principles and methods required by the extrinsic test and relied on admittedly unprotectable similarities, rendering his reports unhelpful and inadmissible. *See* below at 13-16.

## 2. THERE IS NO GENUINE DISPUTE THAT PLAINTIFF CANNOT ESTABLISH THE ELEMENTS OF COPYRIGHT INFRINGEMENT

### (a) The Standards Applicable to the Motion for Summary Judgment

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the movant shows that summary judgment is appropriate, the burden shifts to the nonmoving party to establish genuine issues exist as to material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The nonmoving party "must designate 'specific facts showing that there is a genuine issue for trial'" (*id.*), and "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks omitted).

### (b) Plaintiff's Claim for Direct Copyright Infringement

"Proof of copyright infringement requires [the plaintiff] to show: (1) that [it] owns a valid copyright in [its work]; and (2) that [the defendant] copied protected aspects of the work." *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (en banc). For purposes of their Motion, Defendants assume that Plaintiff owns a valid copyright, but raise that Plaintiff cannot establish a triable issue as to the second prong.

"The second prong of the infringement analysis contains two separate components: 'copying' and 'unlawful appropriation.'" *Id.* (quoting *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018)). "Although these requirements are too often referred to in shorthand lingo as the need to prove 'substantial similarity,'

they are distinct concepts." *Id.* at 1064.  Here, Plaintiff fails to raise a genuine issue as to both copying and unlawful appropriation.

### (1)    Plaintiff Fails to Raise a Genuine Issue as to Whether Copying Even Occurred

"Because independent creation is a complete defense to copyright infringement, a plaintiff must prove that a defendant copied the work." *Skidmore*, 952 F.3d at 1064; 2 M. NIMMER & D. NIMMER, NIMMER ON COPYRIGHT § 8.01[A] (2025) ("[A]bsent copying, there can be no infringement of copyright, regardless of the extent of similarity.").  The plaintiff has the burden of proving the historical fact that the defendant's work copies the plaintiff's work. *Rentmeester*, 883 F.3d at 1117.

Unless copying is admitted—and here it is vehemently denied—copying is proven circumstantially by evidence of either (a) access <u>and</u> substantial similarities between the defendant's and the plaintiff's works that are probative of copying, or (b) striking similarities. *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000), *overruled on other grounds by* Skidmore, 952 F.3d 1051.  Plaintiff does not come close to meeting either standard.

### (i)    Plaintiff Cannot Establish Access—a Reasonable Opportunity to Copy

To prove access, the plaintiff must present evidence that the creator of the defendant's work had a "reasonable possibility, not merely a bare possibility," to copy the plaintiff's work before creating the allegedly infringing work. *Loomis v. Cornish*, 836 F.3d 991, 995 (9th Cir. 2016) (quoting *Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1143 (9th Cir. 2009)).  "Access may not be inferred through mere speculation or conjecture." *Three Boys Music*, 212 F.3d at 482 (quoting 4 NIMMER ON COPYRIGHT § 13D.05[B][2]).  Instead, access is shown either by (1) "showing that the plaintiff's work has been widely disseminated" or (2) "establishing a chain of events linking the plaintiff's work and the defendant's access." *Loomis*, 836 F.3d at 995.  Plaintiff has shown neither.

### a. ***Somebody Tonight*** **Was Not Widely Disseminated**

"In most cases, the evidence of widespread dissemination centers on the degree of a work's commercial success and on its distribution through radio, television, and other relevant mediums." *Loomis*, 836 F.3d at 997. "For musical works, plaintiffs often prove widespread dissemination with evidence of frequent airplay, 'record sales, awards, billboard charts, or royalty revenues.'" *Batiste v. Lewis*, 976 F.3d 493, 503 (5th Cir. 2020) (quoting *Guzman v. Hacienda Recs. & Recording Studio, Inc.*, 808 F.3d 1031, 1038 (5th Cir. 2015)). "[T]he plaintiff must show that the work has enjoyed considerable success or publicity." *Id.*; *see e.g.*, *Acuff–Rose Music, Inc. v. Jostens, Inc.*, 988 F. Supp. 289, 290 (S.D.N.Y. 1997) (showing wide dissemination has been shown where plaintiff's work "rose to number five on the national country charts" before the alleged infringement).

Plaintiff's First Amended Complaint does not even refer to widespread dissemination. It is no wonder: Plaintiff cannot come close to meeting that standard.

As for proof of dissemination via the internet, Simmons took advantage of the fact that anyone can post music on Spotify or YouTube. But Mr. Simmons admitted he has no evidence of the number of times *Somebody Tonight* was streamed or downloaded, or the amount earned from streams and downloads, by the time that *Better* was created. Facts 17-22, 25-27. In fact, the only evidence Plaintiff produced regarding the amount earned from *Somebody Tonight* is a document showing that Mr. Simmons made a mere $50.49 from streams and downloads of that song, and Mr. Simmons could not state whether that amount was earned prior to the August 2019 creation of *Better*. Facts 23-24. Plaintiff cannot establish wide dissemination merely by pointing to the fact that *Somebody Tonight* was available on the internet. *See Woodland v. Hill*, 136 F.4th 1199, 1208 (9th Cir. 2025); *Cooley v. Target Corp.*, No. 20-2152(DWF/DTS), 2022 WL 4540091 at *5 (D. Minn. 2022) (widespread dissemination requires "significantly more" than 125,000 views of Plaintiff's video on social media).

8

1  Rather than show "frequent" radio airplay (*Batiste*, 976 F.3d at 503), Plaintiff
2  could identify only one radio station that played *Somebody Tonight*.  But Mr. Simmons
3  was unable to state whether *Somebody Tonight* was played more than one time on that
4  station, or critically, whether it was played before the 2019 creation of *Better*.  Facts
5  28-31.  And Mr. Simmons could identify only two live performances of *Somebody
6  Tonight*, each at a local venue with an estimated 100-250 people in the audience.  Facts
7  32-33; *cf. Loomis*, 836 F.3d at 998 (testimony that plaintiff's song received "tons of
8  airplay" and had been written about in local newspapers and trade magazines in city
9  where defendants were recording was insufficient).

10  Mr. Simmons also has no other evidence that could, under the case law,
11  conceivably support wide dissemination.  He has no evidence that any physical copies
12  of *Somebody Tonight* were sold before *Better* was created in August 2019.  Fact 34.
13  *Somebody Tonight* won no awards and never appeared on any Billboard charts, let
14  alone prior to the creation of *Better*.  Facts 35-36.  And *Somebody Tonight* was not
15  released by a record company until at least 2024, when Mr. Simmons apparently
16  signed to a small, independent record company.  Fact 37.

17  In short, Plaintiff cannot establish access by widespread dissemination.

18  **b.    There Is No Chain of Events Connecting**
19  ***Somebody Tonight* to *Better*'s Creators**

20  Nor has Plaintiff established access by proving a chain of events that links
21  *Somebody Tonight* to the creators of *Better*.  As noted above, Plaintiff's chain of
22  events theory is that, in April 2020, Mr. Rindner said he would "promote" *Somebody
23  Tonight* for free and offered to send *Somebody Tonight* to "every person in his contact
24  list that worked in the music industry."  Fact 39, 41-42.  From these allegations, and
25  the allegation that Mr. Rindner purportedly told Plaintiff that he "worked" *Better*,
26  Plaintiff speculates that Mr. Rindner might have given *Somebody Tonight* to the
27  creators of *Better*.  *See* above at 4-5; FAC at 9-10 ¶¶ 30-31.
28  ///

9

***An initial and fatal problem with Plaintiff's access theory is that Better was already written and recorded some eight months before Simmons claims to have given Somebody Tonight to Mr. Rindner***.  Facts 7, 12-15, 39-40.  Accordingly, even if Mr. Rindner had given *Somebody Tonight* to someone who knew the creators of *Better*, that would not raise an inference of copying.  <u>*Bernal v. Paradigm Talent Literary Agency*, 788 F. Supp. 2d 1043, 1054 (C.D. Cal. 2010)</u> ("[T]o logically support a claim that Defendant[s] copied Plaintiff's work, Defendants must have had access to Plaintiff's copyrighted work *before* the creation of the allegedly infringing work.").  For that reason alone, Plaintiff fails to establish a genuine dispute as to whether copying occurred.

Plaintiff's access theory also fails because it is completely speculative.  Plaintiff has no evidence of who was supposedly on Mr. Rindner's "contact list" or that Mr. Rindner actually sent *Somebody Tonight* to *anyone*.  Facts 43-44.  And the evidence is uncontroverted that Mr. Rindner never sent it to the creators of *Better*: all of the songwriter defendants have given sworn testimony that they never heard of Mr. Rindner or MMM, Mr. Simmons or Havyn, or *Somebody Tonight* before Plaintiff claimed infringement.  Facts 46-48, 53.

There is also no evidence that Mr. Rindner sent *Somebody Tonight* to anyone at SME, which was not involved in the creation of the *Better* demo.  Facts 8-9, 43-45.  And even if Plaintiff could establish that *Somebody Tonight* were given to somebody at SME prior to the creation of *Better*, it has long been the law that "bare corporate receipt" of a plaintiff's work by someone at a company does not establish access by others at that company.  <u>*Loomis*, 836 F.3d at 995</u>; <u>*Meta-Film Assocs., Inc. v. MCA, Inc.*, 586 F. Supp. 1346, 1357-58 (C.D. Cal. 1984)</u> ("[I]t is clearly unreasonable to attribute" information received by one person to others at the same company).

Indeed, courts have repeatedly rejected access theories even less attenuated than Plaintiff's conjecture that Mr. Rindner, or perhaps some other random third party, gave *Somebody Tonight* to someone who knew *Better*'s creators.  *See, e.g.,* <u>*Loomis*,</u>

10

836 F.3d at 996 (access not established by evidence that plaintiff's song was given to record company's Artist and Repertoire representative charged with finding and sharing music; representative had no role or input in creating defendants' song); *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1178 (9th Cir. 2003) (evidence that plaintiff's work was provided to talent agent who "loved" it and whose client was involved in development of allegedly infringing work, failed to establish access; suggestion that talent agent might have provided plaintiff's work to his client was "speculation, conjecture, and inference"); *Tisi v. Patrick*, 97 F. Supp. 2d 539, 547-48 (S.D.N.Y. 2000) (evidence that demo tape given to record companies insufficient to establish access where no evidence that the demo tape was given to composer); *King v. Najm*, No. CV 08-4164, 2011 WL 13186238 at *1 (C.D. Cal. Mar. 8, 2011) (access not established by evidence that plaintiff's recording was provided to record executive who later met with defendant recording artist in hopes of signing him).

Because none of Plaintiff's theories establish a reasonable possibility of access, Plaintiff's claim must be dismissed as a matter of law.

### (ii)    Separately, Plaintiff Also Cannot Show Substantial Similarity Probative of Copying

Even if Plaintiff were able to raise a triable issue as to access (which it cannot), Plaintiff's claim fails on the separate and independent ground that Plaintiff cannot establish substantial similarities probative of copying.  This element requires proof that the plaintiff's and the defendant's works share "similarities one would not expect to arise if the two works had been created independently." *Rentmeester*, 883 F.3d at 1117.  However, as discussed below, the claimed similarities are scattered throughout overall different music and lyrics, and they are commonly found in prior art songs predating *Somebody Tonight*.  *See* below at 16-21; Facts 56, 57, 63.  For example, Ashley Simpson's *Say Goodbye* (2005) uses the same sequence of melodic notes and also the lyric "fight" in the context of a song about a relationship. Fact 58. Indeed, ///

11

1  there are more similarities between *Better* and *Say Goodbye* than there are between

2  *Better* and *Somebody Tonight*.  Fact 59.

3      Because the allegedly similar elements appear in popular songs before

4  *Somebody Tonight*, they very well could "arise [in *Somebody Tonight* and *Better*] if

5  the two works had been created independently."  *Rentmeester*, 883 F.3d at 1117.  As

6  a result, they are not probative of copying.

7      To trigger an inference of copying Plaintiff would have to establish <u>both</u> access

8  <u>and</u> substantial similarities probative of copying, but it cannot establish either.  For

9  these independent reasons, Plaintiff's claim fails as a matter of law.

10                    **(iii)    Plaintiff Does Not Even Try to Claim Striking Similarity**

11      Because Plaintiff cannot establish access (*see* above at 7-11), Plaintiff can only

12  raise a genuine dispute as to copying by establishing that *Somebody Tonight* and *Better*

13  are strikingly similar.  The evidence is uncontroverted that they are not.

14      Striking similarity can be shown only in "rare cases" where the Plaintiff

15  provides evidence that the two works "are so strikingly similar as to *preclude the*

16  *possibility*" of independent creation.  *Stabile v. Paul Smith Ltd.*, 137 F. Supp. 3d 1173,

17  1188 (C.D. Cal. 2015) (emphasis added).  Striking similarity "only applies ... where

18  the works are so unmistakably similar that, as a matter of logic, the only explanation

19  [for the similarities] … must be copying rather than ... coincidence, independent

20  creation, or prior common source."  *Bernal v. Paradigm Talent & Literary Agency*,

21  788 F. Supp. 2d 1043, 1052 (C.D. Cal. 2010) (quoting 4 NIMMER ON COPYRIGHT §

22  13D.07) (internal quotation marks omitted).  Accordingly, prior art with similar

23  usages negates striking similarity.  *Tisi*, 97 F. Supp. 2d at 548.

24      Here, Plaintiff neither pleads striking similarity nor offers expert testimony of

25  striking similarity.  Facts 60-61.  For that reason alone, Plaintiff cannot rely on striking

26  similarity to raise an inference of copying.  Additionally, because the claimed

27  similarities appear in prior art (Fact 63) and are not even probative of copying (*see*

28  ///

above at 11-12), they cannot possibly "preclude all explanations other than copying." *Guzman*, 808 F.3d at 1040.

Because Plaintiff cannot raise an inference of copying, either through access and probative similarity, or through striking similarity, its claim fails as a matter of law.

**3.    PLAINTIFF FAILS TO RAISE A GENUINE DISPUTE AS TO UNLAWFUL APPROPRIATION**

**(a)    The Extrinsic Test for Substantial Similarity in Protected Expression**

Even if Plaintiff could raise a genuine dispute as to whether copying occurred—and it cannot—Plaintiff's claim also fails because Plaintiff cannot raise a genuine dispute as to unlawful appropriation, *i.e.*, whether the similarities in *Better* and *Somebody Tonight* are in protected expression.

"The mere fact that a work is copyrighted does not mean that every element of the work may be protected." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348 (1991). To prove unlawful appropriation, a plaintiff must show that "the similarities between the two works [are] 'substantial' and … involve protected elements of the plaintiff's work." *Rentmeester*, 883 F.3d at 1117. Two tests are applied: an "extrinsic test" or objective test, and an "intrinsic test" or subjective test. *Shame On You Prods., Inc. v. Banks*, 893 F.3d 661, 667 (9th Cir. 2018) (affirming summary judgment based on extrinsic test). But at "summary judgment, courts apply only the extrinsic test[.]" *Morrill v. Stefani*, 338 F. Supp. 3d 1051, 1058 (C.D. Cal. 2018) (quoting *Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072, 1077 (9th Cir. 2006), *overruled on other grounds by Skidmore*, 952 F.3d 1051).

"[T]he extrinsic test … compares the objective similarities of specific expressive elements in the two works." *Skidmore*, 952 F.3d at 1064. Courts apply a "three-step analysis: (1) the plaintiff identifies similarities between the copyrighted work and the accused work; (2) of those similarities, the court disregards any that are

based on unprotectable material …; and [if any similarities remain,] (3) the court must determine the scope of protection ('thick' or 'thin') to which the remainder is entitled 'as a whole.'" *Corbello v. Valli*, 974 F.3d 965, 974 (9th Cir. 2020).  The burden is on the plaintiff to identify the similarities for this analysis.  *Id.*; *Bernal*, 788 F. Supp. 2d at 1060.

"Crucially, because only substantial similarity in protectable expression may constitute actionable copying … 'it is essential to distinguish between the protected and unprotected material in a plaintiff's work.'" *Skidmore*, 952 F.3d at 1064.  "A court must take care to inquire only whether the *protectible elements, standing alone, are substantially similar*" and "filter out and disregard the non-protectible elements …." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822-23 (9th Cir. 2002) (quotation marks omitted).  The test often requires "analytical dissection of a work and expert testimony." *Morrill*, 338 F. Supp. 3d at 1058.

"[T]he extrinsic test is objective and is often resolved as a matter of law," even in music cases with dueling musicologists.  *Gray*, 28 F.4th at 97; *see, e.g.*, *VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 878-79 (9th Cir. 2016) (summary judgment affirmed where musicologist's claimed similarities between musical works—a quarter-note horn hit and a full measure containing a half-note rest, eighth-note rest, eighth-note horn hit, and quarter-note horn hit—were unprotectable); *see also* cases cited below at 15.

"In the field of popular songs, many, if not most, compositions bear some similarity to prior songs."  *Skidmore*, 952 F.3d at 1069 (quoting 1 NIMMER ON COPYRIGHT § 2.05[B]).  "In assessing originality, courts must be 'mindful of the limited number of notes and chords available to composers and the resulting fact that common themes frequently appear in various compositions, especially in popular music.'" *Newton v. Diamond*, 204 F. Supp. 2d 1244, 1253 (C.D. Cal. 2002), *aff'd* 388 F.3d 1189 (9th Cir. 2004) (quoting *Gaste v. Kaiserman*, 863 F.2d 1061, 1068 (2d Cir. 1988) (similarities "between pieces of popular music must extend beyond themes that

14

could have been derived from a common source")).  Additionally, the extrinsic test is not satisfied if "the two works reveal[] greater, more significant differences and few real similarities." *Funky Films*, 462 F.3d at 1078.

### (b) Plaintiff's Expert Fails to Adhere to the Extrinsic Test

As an initial matter, Plaintiff cannot carry its burden under the extrinsic test because its expert, Dr. Sloan, failed to apply the principles and methods required by that test, leaving Dr. Ferrara's opinions and analysis unrebutted.

The extrinsic test requires identifying and filtering out commonplace elements, but Dr. Sloan admittedly failed to research prior art to determine whether the claimed similarities are commonplace.  Fact 64.  Moreover, Dr. Sloan relies on claimed similarities that are admittedly commonplace and unprotectable.  Facts 65-66. Because Dr. Sloan's analysis does not "*eliminate* the non-protectible prior art components" and other unprotectable elements "from the songs in issue, and then compare the protectable remainder," his reports are "invalid under the extrinsic test and … legally irrelevant." *Johannsongs-Publishing, Ltd. v. Lovland*, No. CV-18-10009-AB(SSx), 2020 WL 2315805 at *6 (C.D. Cal. Apr. 3, 2020) (granting summary judgment where the plaintiff's expert musicologist failed to filter out prior art elements), *aff'd* No. 20-55552, 2021 WL 5564626 (9th Cir. Nov. 29, 2021); *Stone v. Carey*, No. 2:23-cv-09216-MRA-JDE, 2025 WL 1190518 at *9-*11 (C.D. Cal. Mar. 19, 2025) (similar); *Yonay v. Paramount Pictures Corp.*, No. CV 22-3846-PA(GJSx), 2024 WL 2107721 at *3 (C.D. Cal. Apr. 5, 2024) (similar); *Knowles v. Spin Master, Inc.*, No. CV 18-5827-PA(JCx), 2019 WL 4565102 at *4 (C.D. Cal. Sept. 17, 2019) (similar).

Furthermore, Dr. Sloan's expert opinions are subjective and unreliable.  His reports rely on isolated similarities that he fails to put in the context of the entire, overall different compositions.  "'[L]ists of similarities' are 'inherently subjective and unreliable,' especially where," as here, "they 'emphasize … random similarities scattered throughout the works.'" *Olson v. National Broad. Co., Inc.*, 855 F.2d 1446,

1450 (9th Cir. 1988) (quoting *Litchfield v. Spielberg*, 736 F.2d 1352, 1356 (9th Cir. 1984)); *Johannsongs*, 2020 WL 2315805 at *5 (similar).  Also, Dr. Sloan claims that the similarities—including admittedly unprotectable similarities—are significant because "average listeners" would notice them.  Facts 66-68.  But what an "ordinary reasonable" person might hear is exclusively the province of the subjective *intrinsic* test, not the objective *extrinsic* test.  *Olson*, 855 F.2d at 1449; *see Skidmore*, 952 F.3d at 1064 ("the intrinsic test, 'test[s] for similarity of expression from the standpoint of the ordinary reasonable observer, with no expert assistance.'"); *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1476 (9th Cir. 1992).  Indeed, Dr. Sloan's analysis could permit a trier of fact to find infringement based entirely on unprotectable similarities, which defeats the very purpose of the extrinsic test.  *See Johannsongs*, 2020 WL 2315805 at *5 ("[Plaintiff's expert] fails to filter out unprotectable prior art elements, which is the foundation of the extrinsic test."); *see Skidmore*, 952 F.3d at 1064 (under the extrinsic test, "it is essential to distinguish between the protected and unprotected material in a plaintiff's work."); *Olson*, 855 F.2d at 1453.

For these reasons alone, Plaintiff cannot carry its burden under that test and its copyright infringement claim fails as a matter of law.

**(c)** **The Undisputed Facts Confirm That Plaintiff Relies on Unprotectable Similarities**

While Dr. Sloan fails to filter out and distinguish unprotectable elements, the declaration and reports of Defendants' expert, Dr. Lawrence Ferrara, establish that, applying this Circuit's extrinsic test and its required dissection and disregard of unprotectable elements, Plaintiff has failed to identify substantial similarities in protectable expression.

As for lyrics, it is undisputed that *Somebody Tonight* and *Better* are overall different: Dr. Sloan identifies only that each work uses the word "fight" in the context of a relationship and sentences with the words "on" and "floor."  Facts 82-84.  Dr. Sloan is cherry-picking commonplace words and ideas found in other songs (Facts 94-

16

95, 100) and ignores that those words occur in different contexts and different sections of *Somebody Tonight*'s and *Better*'s completely different lyrics (Facts 82-83, 85-93, 96-99). The Copyright Act does not protect isolated and commonplace words or short phrases. *See, e.g.*, <u>Narell v. Freeman, 872 F.2d 907, 911 (9th Cir. 1989)</u>.

As for melody, Dr. Sloan identifies short fragments of the songs' vocal melodies and guitar melodies (Facts 105, 111-112), but to the extent these melodies in *Somebody Tonight* and *Better* are similar, the singer is mostly singing the same notes as the guitar melody (Fact 113). Thus, the melodic similarity amounts to a single fragment—namely, a short sequence of five notes (with pitches corresponding to scale degrees 3-3-4-5-3) that sometimes is followed by a repetition of some of those notes.[1] Facts 105, 111-113. The vocal and guitar melodies are otherwise totally different (Facts 106-110, 114-115).

Dr. Ferrara's analysis has established that this sequence, even in repetition, is commonly found in popular songs predating Plaintiff's work. That includes Ashley Simpson's *Say Goodbye* (2005), La Lupita's *Pobre Normal* (1984), The Yellow Monkey's *Love Love Show* (1998), and many others. Facts 118-122. Copyright protection does not "extend to common or trite musical elements" that are commonly found in popular music and that result from common musical principles. <u>Gray v. Hudson, 28 F.4th 87, 97 (2022)</u> (eight-note sequences played in an even rhythm were "trite" and unprotectable).

As for harmony (*see* Fact 123), Plaintiff concedes that the chord progressions are different, but argues vaguely that the "shape" of the songs' *different* chords is similar (Facts 127-129). That is an abstraction that is beyond the scope of the objective extrinsic test and of copyright protection. <u>Gray, 28 F.4th at 100</u> ("[I]t could be argued that the overall 'shape' of a melody … is nothing more than an abstraction

---

[1] *See* Facts 102-104 for definitions and evidence cited therein for definitions of "scale degrees" and other terms.

1   outside the protection of copyright law."). Furthermore, Dr. Sloan admits that the
2   purported similarity in "shape" is "idiomatic to the guitar." Fact 130. Plaintiff cannot
3   copyright expression that "flow[s] naturally" from playing a guitar. *Benay v. Warner*
4   *Bros. Entm't, Inc.*, 607 F.3d 620, 625 (9th Cir. 2010) (unprotectable elements include
5   "characteristics that flow naturally from the works' shared basic plot premise"); *Gray*,
6   28 F.4th at 97 ("trite" expression is unprotectable).

7       As for rhythm, it is undisputed that *Somebody Tonight* and *Better* are very
8   different, with different tempos and drum patterns. Facts 131-134, 139-142. Dr.
9   Sloan identifies only a few random similarities, like 4/4 "meter" and a snare drum on
10  beats 2 and 4, both of which he admits are among the most commonplace rhythmic
11  elements in popular music. Facts 135-138. They are also fundamental musical
12  "building blocks" that "cannot be exclusively appropriated by any particular author."
13  *Skidmore*, 952 F.3d at 1069.

14      The works' also have different structures and Plaintiff identifies only very
15  general similarities, like an introduction that uses a guitar and a Verse consisting of
16  eight bars, which are also found in innumerable other songs. Facts 72-80; *see Tisi*, 97
17  F. Supp. 2d at 549 ("[T]here is nothing unusual about … an acoustic guitar
18  introduction"); *McDonald v. West*, 138 F. Supp. 3d 448, 454, 457-58 (S.D.N.Y. 2015)
19  (alleged similarity in "eight-bar introduction with some vocal ad lib in the
20  background" followed by similar lyrical references was unprotectable; eight-bar
21  phrases are commonplace and "song structures" are "not protected").

22      Dr. Sloan also claims similarity in the ways in which the singers sing in the
23  sound recordings of *Somebody Tonight* and *Better*. But that is an unprotectable
24  performance element that is beyond the scope of a musical composition copyright.
25  Facts 151-152; *Newton*, 388 F.3d at 1194 (summary judgment affirmed; plaintiff's
26  expert failed to filter out "performance elements," such as the way performer sings
27  and plays the flute, that were licensed elements of sound recording copyright, not
28  musical composition copyright); *Gray*, 28 F.4th at 99 (courts must "distinguish[]

18

between 'elements protected by [the plaintiff's] copyright over the musical composition' at issue and 'those attributable to his performance of the piece or the sound recording'") (quoting <u>*Newton*, 204 F. Supp. 2d at 1258</u>).[2]  In any event, Dr. Sloan admits that the way Mr. Malik sings *Better* is different from the way Mr. Simmons sings *Somebody Tonight*.  Fact 153.

In short, Plaintiff fails to identify similarities in protected expression and its claim accordingly fails as a matter of law.

### (d)    **Plaintiff Cannot Satisfy the Extrinsic Test By Resorting to a Selection and Arrangement of Unprotectable Elements**

#### (1)    **Selection and Arrangement Protects Only a Particular, Coherent Pattern, Synthesis, or Design Present in Both Works**

Plaintiff also cannot establish a claim based on the way in which *Somebody Tonight* and *Better* select and arrange their respective unprotectable elements.

A selection and arrangement copyright protects only the "the *particular* way in which the artistic elements form a coherent pattern, synthesis, or design." <u>*Skidmore*, 952 F.3d at 1074</u> (emphasis in original).  Also, a selection and arrangement of uncopyrightable elements can be protected only if those elements are "numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." <u>*Id.*</u> (quoting <u>*Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003)</u>).  The plaintiff must establish that "the works share, in substantial amounts, the 'particular,' *i.e.*, the 'same,' combination of unprotectible elements." <u>*Id.* at 1075</u> (emphasis added).

---

[2]    The way in which a composition is performed may be protected by a sound recording copyright in the recording of that performance.  But Plaintiff does not and cannot claim infringement of the copyright in the sound recording of *Somebody Tonight* because sound recording copyrights protect only the use of the "actual sounds" of the sound recording (*i.e.*, sampling).  <u>17 U.S.C. § 114(b)</u>; <u>*VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 883 (9th Cir. 2016)</u>.  It undisputed that *Better* uses no actual sounds from the *Somebody Tonight* sound recording.  Fact 70.

**(2)    Plaintiff Fails to Establish That *Somebody Tonight* and *Better* Share a Protectable Selection and Arrangement**

Dr. Sloan claims that *Somebody Tonight* and *Better* share a "constellation" of musical features that purportedly distinguish those songs from some of the prior artworks that Dr. Ferrara identified.  Fact 148.  However, Dr. Sloan has admitted that his term "constellation" means nothing more than a "combination" (Fact 149), and the Court of Appeals, sitting *en banc*, has made clear that a plaintiff cannot satisfy the extrinsic test merely by identifying a "combination" of unprotectable similarities. *Skidmore*, 952 F.3d at 1075.  Indeed, a "copyright plaintiff 'd[oes] not make an argument based on the overall selection and sequencing of … similarities' if the theory is based on '*random* similarities scattered throughout the works.'"  *Skidmore*, 952 F.3d at 1075.

Here, it is beyond dispute that the selection and sequencing of similarities in *Somebody Tonight* and *Better* are very different.  As for lyrics, Dr. Sloan cites the words "fight," "on," and "floor" in these lyrics:

| *Somebody Tonight* | *Better* |
| --- | --- |
| [Verse 1] | [Verse 1] |
| We got in for free | Hope I only leave good vibes **on** your |
| All you can eat | living room **floor** |
| Drink even more | It hurts so bad that I didn't when you |
| Till we cannot [or, per Dr. | asked for more |
| Sloan, "can"] | Your dad probably loves me more than |
| **Fight** anymore | he ever did now |
| Creep **on** the **floor** | … |
| Looking to score | [Chorus 1] |
| | Why?  Why wait to **fight**? |
| | Give it a try |
| | Or I'll say goodbye while it's right … |

20

Facts 82-86, 96-97. These three words are clearly random and scattered throughout the songs' overall different lyrics.

As for the music, "fight" occurs in different structural sections and on different notes and different beats of the melody (Facts 154-158), and "on" and "floor" are sung to different vocal melodies entirely (Fact 159). The allegedly similar melodic sequence also occurs in different structural sections (Facts 106-107, 116-117), in overall different melodies (Facts 106-110, 114-115), and with different chord progressions. Facts 127-128. *Somebody Tonight* and *Better* also have overall different rhythms, tempos, keys, and other elements. Facts 124-126, 142, 146-147.

In short, Plaintiff has not and cannot show that the claimed similarities in *Somebody Tonight* and *Better* form a "coherent pattern, synthesis, or design" that is present in both works. *Skidmore*, 952 F.3d at 1074.

Furthermore, Plaintiff must still establish that the claimed selection and arrangement is itself protectable. *See, e.g.*, *Corbello*, 974 F.3d at 974 n.2. Because Dr. Sloan failed to research whether the purported "constellation" appears in prior art (Fact 150), Plaintiff lacks competent evidence that the constellation is protectable. Also, as explained above, Dr. Sloan's "constellation" includes elements of performance that are beyond the scope of a musical composition copyright. *See* above at 18-19; Facts 151-152. Dr. Sloan offers nothing to suggest that there is a "constellation" of similarities consisting solely of *musical composition* elements that amounts to a "new" or "*novel* arrangement." *Skidmore*, 952 F.3d at 1075. By contrast, Dr. Ferrara's analysis has shown that all of the allegedly similar musical composition elements are found in prior art, including most of them in combination. Facts 63, 95, 118.

Accordingly, Plaintiff cannot save its claim by raising a selection and arrangement argument, and its infringement claim fails as a matter of law.

## 4.    PLAINTIFF'S SECONDARY INFRINGEMENT CLAIMS FAIL ACCORDINGLY

Plaintiff's second and third claims for relief in its First Amended Complaint are for, respectively, contributory and vicarious copyright infringement. FAC at 13-18 ¶¶ 53-82. These claims fail because they are secondary liability theories that extend liability for another's direct infringement. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005). "Secondary liability for copyright infringement does not exist in the absence of direct infringement by a third party." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001). As shown above, Plaintiff fails to establish that there was any direct infringement. Accordingly, its claims for contributory and vicarious liability necessarily fail as a matter of law.

## 5.    DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

If, for any reason, summary judgment is not granted on all claims, Defendants respectfully submit that partial summary judgment should be entered that *Better* does not copy *Somebody Tonight* and/or is not strikingly similar to *Somebody Tonight*. Summary judgment or partial summary judgment should also be entered in favor of each Defendant as to whom Plaintiff fails to present evidence raising a genuine dispute as to liability.

## 6.    CONCLUSION

For the foregoing reasons, Defendants respectfully submit that summary judgment should be granted.

Dated: November 11, 2025

/s/ Peter Anderson, Esq.

Peter Anderson, Esq.
Eric H. Lamm, Esq.
Alex Cadena, Esq.
DAVIS WRIGHT TREMAINE LLP
[continued next page]

22

Attorneys for Defendants
PHILIP VON BOCH SCULLY,
MICHAEL LAVELL MCGREGOR,
DUSTIN ADRIAN BOWIE,
DAVID DEBRANDON BROWN,
COLE ALAN CITRENBAUM,
ZAIN JAVADD MALIK, and
SONY MUSIC ENTERTAINMENT

1

**CERTIFICATE OF COMPLIANCE**

2          The undersigned, counsel of record for the Defendants who have appeared in

3    this action, certifies that this Memorandum contains 6,975 words, which complies

4    with the word limit of L.R. 11-6.1.

5

6    Dated: November 11, 2025                         _____/s/ Peter Anderson_____

7                                                            Peter Anderson, Esq.
                                                       DAVIS WRIGHT TREMAINE LLP

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28